OPINION
Defendant-appellant, Christopher T. Poynter, appeals a Clinton County Court of Common Pleas decision awarding compensatory and punitive damages to plaintiffs-appellees, J. Richard and Edwina Dungan, on their intentional tort complaint. Poynter complains that the trial court erred in admitting certain medical bills into evidence. Poynter also argues that the trial court erred in awarding punitive damages, and he contends that the judgment was against the manifest weight of the evidence.
On March 6, 1994, Poynter and his girlfriend arrived at the Wilmington, Ohio, Police Department to wait for a friend who had been arrested for driving under the influence of alcohol. Poynter was belligerent and used abusive language in the police waiting room. At one point he faced a closed circuit television camera, unzipped his pants, and uttered a vulgarity. A police dispatcher witnessed Poynter's outbursts and contacted Dungan, a Wilmington police sergeant. Dungan subsequently confronted Poynter and told him to leave the police station. Poynter was argumentative and initially refused to leave. Later, as Poynter exited the waiting room, he uttered an obscenity and struck the door. Dungan then attempted to arrest Poynter. Poynter resisted. Dungan tried to spray Poynter with mace and a struggle ensued. Dungan was later treated for serious facial injuries, including a "blow out fracture of the right orbit" around his eye.
On March 3, 1995, the Dungans filed a civil assault complaint against Poynter in the Clinton County Court of Common Pleas. The trial court held a bench trial on March 20 and 21, 1996. On September 5, 1996, the trial court ruled in favor of the Dungans. The trial court awarded Mr. Dungan $50,000 in compensatory damages and $25,000 in punitive damages; the trial court awarded Mrs. Dungan $5,000 for loss of consortium.
On appeal, Poynter sets forth three assignments of error. Under Poynter's first assignment of error, he argues that the trial court erred in admitting several medical bills into evidence. Poynter claims that the bills, plaintiffs' exhibits six through fourteen, were not properly authenticated at trial. Poynter specifically complains for the first time on appeal that Dungan did not identify each exhibit.
The trial court has broad discretion in determining the admissibility of evidence at trial, and this court will not disturb its ruling absent an abuse of discretion. See State v. Long (1978), 53 Ohio St.2d 91, 98. Evid.R. 901(A) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The testimony of a witness with knowledge that a matter is what it is claimed to be is an example of authentication or identification. Evid.R. 901(B)(1). "Moreover, there is nothing to prevent parties from voluntarily stipulating to the admissibility of evidence otherwise requiring authentication." Evid.R. 901(A), Staff Note.
Dungan's counsel presented the medical bills at issue to Poynter's counsel at least five days before trial in accordance with R.C. 2317.421. R.C. 2317.421 provides in part:
 In an action for damages arising from personal injury * * *, a written bill or statement, or any relevant portion thereof, itemized by date, type of service rendered, and charge, shall, if otherwise admissible, be prima facie evidence of the reasonableness of any charges and fees stated therein for medication * * * or, medical * * * services rendered by the person, firm, or corporation issuing such bill or statement * * *.
During the trial, Dungan's attorney asked Dungan to identify the medical bills. Poynter's attorney objected, however, arguing that the bills first had to be authenticated as "business records." The trial court rejected Poynter's objection and instructed Dungan to continue. Shortly after Dungan resumed his testimony the following discussion occurred:
 [Dungan's Counsel]: Now, Judge, do you want me to go through each and every one? I know that's probably your objection on each and every bill, is that right?
 [Poynter's Counsel]: So long as the court knows that's my objection on each and every bill. We do have a synopsis of the bills.
* * *
[Dungan's Counsel]: The other bills Mr. Shell
 [Poynter's Counsel] was stipulating to was paid either by Workers' Comp or by the City of Wilmington and we can provide that to the Court tomorrow at —
[Poynter's Counsel]: No objection.
(Emphasis added.)
At the end of his case, Dungan sought to introduce the medical bills into evidence. Poynter objected, again arguing that the exhibits had not been properly authenticated as "business records." The trial court overruled the objection. Poynter never complained that Dungan had not identified each exhibit.
Poynter correctly argues that R.C. 2317.421 "is not a mandate for automatic admission of all medical bills alleged to be related to a cause of action; [the statute] requires that the bills be `otherwise admissible.'" See Bennett v. Broadwater (Aug. 31, 1994), Summit App. No. 16724, unreported at 3. A claimant has the burden of showing that a liability event proximately caused claimed damage. Wood v. Elzoheary (1983),11 Ohio App.3d 27, 29. However, "[p]roof of the amount paid or the amount of the bill rendered and of the nature of the services performed constitutes prima facie evidence of the necessity and reasonableness of the charges for medical and hospital services." Wagner v. McDaniels (1984), 9 Ohio St.3d 184, paragraph one of the syllabus. Expert opinion testimony is not necessary when the causal relationship between the liability event and claimed damages is a matter of common knowledge. Wood at 29.
Dungan was prepared to identify each medical bill that was subsequently admitted into evidence. Poynter, however, cut Dungan's testimony short when he raised his "business records" objection. Poynter's objection was meritless because Dungan, the recipient of the medical bills, was "a witness with knowledge" and was qualified to identify the exhibits. See Evid.R. 901(B) (1). Poynter effectively stipulated to Dungan's identification of the bills when he acknowledged that his "business records" objection applied to each of the exhibits, but did not otherwise challenge the necessity, reasonableness, or authenticity of the medical bills. Under these circumstances, the trial court did not err in admitting the exhibits. Poynter's first assignment of error is overruled.
Poynter complains under his second assignment of error that the trial court erred in awarding punitive damages. Poynter argues that Dungan failed to prove by clear and convincing evidence that Poynter maliciously caused Dungan's injuries.
R.C. 2315.21(B) provides in part that punitive damages are not available in a tort action unless "the actions or omissions of the defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult * * *" and "the plaintiff in question has adduced proof of actual damages * * *." A plaintiff must establish that he or she is entitled to punitive damages by clear and convincing evidence. R.C. 2315.21(C)(3). "Actual malice" is that state of mind under which a person's conduct is characterized by hatred, ill will, a spirit of revenge, or a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. Preston v. Murty (1987), 32 Ohio St.3d 334, 336.
The state introduced a videotape at trial that showed Poynter resisting Dungan's attempt to arrest him. Unfortunately, as Dungan and Poynter struggled, they moved out of camera view, and the videotape did not record that part of the struggle where Dungan was injured. Dungan testified that Poynter struck him twice in the right side of the head, although he admitted that he, Dungan, had trouble seeing then because he was affected by mace. Wilmington Police Officer Ron Fithen arrived on the scene moments after the struggle began. Fithen testified that he saw Poynter straddling Dungan and saw Poynter hit Dungan three times on the right side of the head.
Poynter apparently acknowledges that Fithen's testimony supports a finding that Poynter acted with malice, but Poynter challenges Officer Fithen's credibility. This court, however, has thoroughly reviewed the record and finds Poynter's attempts to discredit Officer Fithen's testimony unconvincing.[1] Moreover, Dr. Stephen Hein testified that Dungan's injury to the orbital rim around his eye could only have been caused by an object small enough to fit within the bony orbit and delivered with considerable force. Dr. Hein testified that the injury was consistent with a blow from a fist. This evidence is consistent with Fithen's testimony and supports the trial court's finding.
Dungan produced clear and convincing evidence to support the trial court's conclusion that Poynter "demonstrated malice in that [his actions] represented a conscious disregard for the rights and safety of the Plaintiff and had a great probability for causing substantial harm." Therefore, the trial court did not err in awarding punitive damages. Poynter's second assignment of error is overruled.
Poynter complains under his final assignment of error that the trial court's judgment was against the manifest weight of the evidence. Poynter again challenges Officer Fithen's testimony. This court, however, has thoroughly reviewed the entire record and concludes that the trial court's judgment is not against the manifest weight of the evidence. Poynter's third assignment of error is overruled.
Judgment affirmed.
KOEHLER and POWELL, JJ., concur.
[1] According to Poynter, Fithen's testimony was unreliable because although he testified that Poynter hit Dungan three times, he had previously stated in his police report that Poynter hit Dungan "several times." Poynter also attacks Fithen's testimony because Dungan only remembers being struck twice.