[Cite as *State v. Belle*, 2012-Ohio-3808.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97652**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMES BELLE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-549808

**BEFORE:** Rocco, J., Blackmon, A.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** August 23, 2012

**ATTORNEY FOR APPELLANT**

Myron P. Watson
420 Lakeside Place
323 West Lakeside Avenue
Cleveland, OH 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Brian M. McDonough
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street, 8th floor
Cleveland, OH 44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant James Belle ("Belle") appeals from his conviction for rape, sexual battery, gross sexual imposition ("GSI"), and kidnapping. On appeal, Belle argues that his medical records were improperly excluded; that the trial court should not have permitted the prosecutor to ask a witness about Belle's sexual behavior at the workplace; that the verdict was against the manifest weight of the evidence; and that there was insufficient evidence to convict Belle of rape, GSI, and kidnapping. For the reasons that follow, we overrule all of these assignments of error and affirm the trial court's final judgment.

{¶2} Belle was a corrections officer at the Cleveland House of Corrections. The victim, R.S., was a transvestite inmate. Because R.S. was dressed as a woman, he was kept in the segregation unit. Belle was assigned to guard the inmates in the segregation unit.

{¶3} R.S. alleged that while in the segregation unit, Belle came into his cell, slapped his buttocks, and asked him about "head" (slang for fellatio). Belle left, and when he came back into R.S.'s cell, he forced R.S. to perform fellatio. R.S. testified that Belle ejaculated into his mouth. After the incident, R.S. retained and hid the ejaculate in the finger of a latex glove. R.S. reported the crime, first contacting his family.

{¶4} The Highland Hills Police Department responded and collected the biological evidence. In a photo array, R.S. positively identified Belle as the assailant. R.S. was also able to give police a detailed description of Belle's genital hair. R.S. was taken to the hospital where a sexual assault nurse conducted an exam. DNA testing did not exclude Belle as the source of the semen.

{¶5} During the investigation, Belle submitted a written statement to police indicating that"[d]uring my shift, I had a normal workday with the inmates and nothing to report at [the] end of [my] shift." Tr. 464. Belle made no mention of a glove, sperm, or oral sex during the interview with the police.

{¶6} Belle was convicted in a jury trial for rape (R.C. 2907.02(A)(2)); sexual battery (R.C. 2907.03(A)(11)); kidnapping (R.C. 2905.01(A)(4)) with a sexual motivation specification (R.C. 2941.147(A)); and GSI (R.C. 2907.05(A)(1)). Belle filed his notice of appeal from the trial court's entry of final judgment and presents four assignments of error for review.

"I. The trial court erred and abused its discretion when it failed to admit the medical records of the appellant.

"II. The trial court erred when it allowed the prosecutor to inquire about a defense witness's knowledge of other sexual activity involving the appellant.

"III. The verdicts entered were against the manifest weight of the evidence.

"IV. The verdicts of rape, kidnapping, and gross sexual imposition were legally insufficient as a matter of law."

{¶7} In his first assignment of error, Belle argues that the trial court abused its discretion when it refused to admit Belle's medical records into evidence. We disagree. Belle sought to have medical records admitted into evidence showing that he had complained of penile discharge from time to time. Belle's position was that his medical condition could explain the presence of his semen on the glove. We review the trial court's evidentiary rulings for abuse of discretion. *State v. Williams*, 8th Dist. No. 96813, 2012-Ohio-1830, ¶ 5.

{¶8} Although the parties had originally stipulated that the medical records were admissible, ultimately, the trial court determined that the medical records could be admitted only if accompanied by testimony. The court found that submitting 250 pages of medical records with no testimony would lead to confusion and could mislead the jury. Under the court's reasoning, it was not "within the common experience of lay people as to various types of penile discharge, enlarged prostate glands or any of this sufficient to aid the jury in coming to the conclusion" as to whether Belle was guilty of rape, GSI, and/or sexual battery. Tr. 530.

{¶9} Belle argues unpersuasively that our decision in *Wingfield v. Howe*, 8th Dist. No. 85721, 2006-Ohio-276, supports his position that the trial court was required to admit Belle's medical records. Belle asserts that *Wingfield* stands for the proposition that a trial court must admit medical records, without accompanying testimony, if the parties stipulate that the records are admissible.

{¶10} Although *Wingfield* does state that "proof which describes the medical care that was reasonably necessary for the identified injuries may not require expert testimony when the treatment is a matter of common knowledge," *id.* at ¶ 24, here the trial court found that the medical records did not contain information that was a matter of common knowledge. Accordingly, it was within the trial court's discretion to determine that testimony was required before the records could be seen by the jury. Belle decided not to put on testimony regarding the records, and so the records were not admitted. Because the trial court did not abuse its discretion in concluding that the medical records were admissible only if accompanied by testimony, Belle's first assignment of error is overruled.[1]

{¶11} In his second assignment of error, Belle argues that the trial court abused its discretion in allowing the prosecutor to ask a witness whether Belle had engaged in other sexual activity in the workplace. The trial court concluded that Belle had opened the door to this line of inquiry and, thus, the question was admissible as an exception to Evid.R. 404. The trial court's ruling was not an abuse of discretion and so we overrule the second assignment of error.

---

[1]Further, Belle is not entirely accurate in asserting that the parties stipulated that the records were admissible. The State argued that its stipulation to admit the records was based on the understanding that the records would be admitted in their entirety. Belle sought to have certain portions of the records redacted, including a note made by Belle's treating doctor stating, "Patient having serious judicial issues which do not appear to be related to anything that I am caring for him for."

**{¶12}** Although evidence about a person's character is generally inadmissible, "[e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible." Evid.R. 404(A)(1). In other words, we do not find error "when the defense opens the door to otherwise inadmissible evidence." *State v. Davis*, 195 Ohio App.3d 123, 2011-Ohio-2387, 958 N.E.2d 1260, ¶ 26 (8th Dist.).

**{¶13}** In the instant case, the transcript reveals that Belle's counsel asked the witness, "In connection with your jobs and your duties did you observe any inappropriate conduct on [Belle's] part during your tenure at the Cleveland House of Corrections?" Tr. 491. Later, the prosecutor asked the same witness, "Were you aware that Corrections Officer Belle had engaged in sexual activity with other guards in the officers' restroom while on duty?" Tr. 503. The witness responded, "No." *Id.*

**{¶14}** Belle argues that this question was improper because Belle's conduct with other guards is not relevant character evidence and is not related to Belle's conduct with the inmate population. But the question itself is not evidence, and so Belle cannot object that the prosecutor's question violates Evid.R. 404. It is the answer to the question that constitutes evidence. In this case, the witness's "No" response did not harm Belle's character.

**{¶15}** Further, we agree with the trial court that Belle opened the door to the prosecutor's line of inquiry. Belle's counsel had earlier asked the broad question about Belle's on-the-job conduct and whether he behaved appropriately. Surely, engaging in sexual activity while on duty could qualify as inappropriate workplace behavior.

Because Belle opened the door to questions about his character while on the job, the trial court did not abuse its discretion in allowing the prosecutor's question. Accordingly, the second assignment of error is overruled.

**{¶16}** We consider Belle's fourth assignment of error before his third, because a reversal based on the manifest weight of the evidence can occur only if the State has first presented sufficient evidence to support a conviction. *See State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). Belle asserts that there was insufficient evidence to convict him of rape, GSI, and kidnapping. We disagree. When reviewing whether the verdict was supported by sufficient evidence we determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶17}** Belle argues that his rape conviction was not supported by sufficient evidence because there was no evidence of force or threat of force. Belle asserts that there was no evidence that weapons or physical force were used. First, a rape conviction stands where there is evidence of force or threat of force; there is no requirement that the assailant use a weapon. *See* R.C. 2907.02.

**{¶18}** Second, there was evidence presented at trial that Belle used physical force. Belle entered R.S.'s cell and engaged in sexual contact by slapping R.S.'s buttocks forcefully and using a slang expression ("head") with R.S. to indicate that he wanted oral

sex. During the rape, Belle grabbed R.S. by the head and pulled R.S.'s head toward Belle's penis, restraining R.S.'s liberty for the purpose of engaging in sexual activity. The forced fellatio was nonconsensual and against R.S.'s will. This evidence sufficiently establishes that force was used, and therefore, Belle's position to the contrary is without merit.

{¶19} Finally, we overrule Belle's assignment of error that the verdict was against the manifest weight of the evidence. In evaluating the manifest weight of the evidence, this court sits as the thirteenth juror. We review the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether the jury clearly lost its way such that there was a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We grant a new trial only in the exceptional case where the evidence weighs heavily against the conviction. *Id.*

{¶20} Belle argues that R.S.'s testimony about the details of the rape were so inconsistent that his testimony could not be credible. In his two written statements to police, R.S. claimed in one that Belle had a glove on his penis during the sexual encounter, and in another statement he stated that the glove was not on Belle's penis during the oral sex. Belle also points out the inconsistencies in R.S.'s story as to how R.S. came to possess the glove. In a written statement R.S. claimed that the glove came from Belle, but he testified at trial that it came from a cellmate. Finally, Belle points to conflicting accounts given by R.S. as to what R.S. did with Belle's ejaculate after the attack.

**{¶21}** While some of the details of R.S.'s testimony were inconsistent, the jury did not clearly lose its way in convicting Belle. The DNA evidence, coupled with the fact that Belle denied any unusual contact with R.S. that day, provided the jury with a basis to find Belle guilty. Further, R.S. was able to describe Belle's pubic hair. Belle's conviction does not create a manifest miscarriage of justice. Accordingly, this assignment of error is overruled.

**{¶22}** The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. Defendant's conviction having been affirmed, any bail pending appeal is terminated. The case is remanded to the trial court for execution of the sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

PATRICIA ANN BLACKMON, A.J., and
COLLEEN CONWAY COONEY, J., CONCUR